*766 OPINION OF THE COURT
Leo F. Hayes, J.
Plaintiff in this action was injured in an automobile accident which occurred in the Town of Lafayette, New York, on April 26, 1976. At the time of the accident he was operating a vehicle insured by defendant insurance company. On May 23, 1976, he applied for his P.I.P. benefits under the terms of said policy and was subsequently informed that the company was denying payment of said claim under the terms of section 672 (subd 2, par [b]) of the Insurance Law which excludes from coverage persons injured as a result of operating a motor vehicle while in an intoxicated condition.
In his case-in-chief plaintiff alleged that he had never received the no-fault indorsement from the carrier informing him that he would be excluded from coverage if it was determined that he was operating a motor vehicle while in an intoxicated condition. To rebut this contention defendant called a Ms. Deborah Wolbramski, an employee of the assignments department of the defendant company, who testified as to the procedures followed in issuing policies to insureds of said company and the fact that company records indicated that the indorsement in question had been forwarded to the plaintiff. Based upon the evidence submitted to this court, it is my finding that plaintiff had in fact been notified of the intoxication disclaimer.
The principal issue raised at trial went to whether or not plaintiff was operating his vehicle in an intoxicated condition. Plaintiff testified that he was employed by the Highway Department of the Town of Lafayette, New York, and that he worked until approximately 3:00 p.m. on the afternoon of April 26, 1976. He then journeyed to the Lafayette Inn in the Town of Lafayette, New York, where at trial he testified he had three or four nine-ounce glasses of draft beer before leaving for his residence. This testimony was contradicted by plaintiff’s prior statement at an examination before trial that he had four or five nine-ounce glasses of draft beer at the Lafayette Inn.
Plaintiff testified that after leaving the Lafayette Inn he proceeded to the residence of one Diane German with whom he was living and had a full Supper meal. After eating he watched television and drank another three 12-ounce cans of beer until approximately 9:00 p.m. when he left his residence en route to a grocery store to pick up additional beer and *767 groceries. The accident in question occurred a short time later while plaintiff was proceeding north on Route 11 in said town when his vehicle went off the east shoulder of the road, skidded approximately 33 yards in a ditch, came back onto the paved portion of the highway and skidded an additional 44 yards sideways until he went off the west side of the road, rolled over and crashed into a loading dock at the side of the road.
Plaintiff testified that at the time of the accident he was traveling approximately 50 miles per hour, that the road was wet, slippery and that it was raining and sleeting. He next recalls regaining consciousness approximately three weeks later at the Crouse-Irving Memorial Hospital, Syracuse, New York.
There were no witnesses to the accident and Trooper Olan B. McCoy of the New York State Police testified that when he arrived at the scene at approximately 9:40 p.m. the victim was unconscious, bleeding profusely and had no pulse. He also indicated that he was unable to detect any odor of alcohol on the plaintiff. Trooper McCoy testified that he completed the usual accident-scene investigation but that no citations or alleged violations of the Vehicle and Traffic Law were issued to the plaintiff.
As a proof that the plaintiff was intoxicated, the defendant relies upon a blood test taken at Crouse-Irving Memorial Hospital shortly after the plaintiff was admitted during the night of April 26, 1976. It is the defendant’s contention that this test is admissible under CPLR 4518 as a business record and that, in and of itself, establishes the fact that the plaintiff was intoxicated.
Plaintiff contends that this record is insufficient to prove that he was intoxicated unless it can be shown that the guidelines required for the admissibility of a blood alcohol test pursuant to the Vehicle and Traffic Law were followed.
Miss Linda Thompson, a medical laboratory technician employed at the hospital, testified for the defense that on the night in question, sometime during her work shift which ran from 11:30 p.m. to 7:00 a.m., she received a vial containing a blood sample identified as belonging to the plaintiff from someone in the emergency room. Miss Thompson testified that she analyzes approximately 50 such samples per night and was unable to recall who specifically handed her the vial in question. Miss Thompson further testified that after analyzing *768 the specimen allegedly obtained from plaintiff that it had a blood alcohol level of .268%.
Defendant conceded that a review of the hospital records fails to show who drew the blood sample from the plaintiff and under what conditions it was taken. Plaintiff contends that there was an insufficient chain of custody for the specimen in question, that the hospital records had failed to show how the blood was taken, who took it, or that a proper cleansing solution was used. He did not contest the qualifications of Miss Thompson or the method she used to analyze the sample.
Defendant also called Dr. Charles K. Planer, a licensed physician, who was asked to interpret a blood alcohol level of .268%. Dr. Planer stated that based upon his experience as a staff psychiatrist at the Veterans’ Hospital for nearly five years for approximately 50% of the patients who were alcoholics, and based upon the Goodman studies and American Medical Association guidelines, a person with a blood alcohol level of .268 milligrams would be moderately to severly intoxicated.
Section 1192 of the Vehicle and Traffic Law of the State of New York, as referred to in section 672 (subd 2, par [b]) of the Insurance Law, indicates that a person with a blood alcohol level in excess of .10 milligrams is in violation of said section of the Vehicle and Traffic Law.
The issue presented to this court is whether or not the hospital record in and of itself is sufficient to prove that the plaintiff was operating a motor vehicle while in an intoxicated condition. CPLR 4518 (subd [a]) reads as follows: "Generally. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility. The term business includes a business, profession, occupation and calling of every kind.” Based upon this statute it is clear that the hospital record of the blood test is admissible. However, said section also provides that the *769 weight to be given to such evidence shall be affected by all other circumstances of the making of the memorandum or record, including lack of personal knowledge of the maker.
Section 672 (subd 2, par [b]) of the Insurance Law provides: "An insurer may exclude from coverage required by subdivision one a person who * * * (b) is injured as a result of operating a motor vehicle while in an intoxicated condition or while his ability to operate such vehicle is impaired by the use of a drug (within the meaning of section eleven hundred ninety-two of the vehicle and traffic law)”. It is clear from reading the above-referenced section of the Insurance Law that the Legislature of this State intended to rely upon the standards established in section 1192 of the Vehicle and Traffic Law to determine whether or not a person was operating a motor vehicle while he was in an intoxicated condition. Subdivision 7 of section 1194 of the Vehicle and Traffic Law sets forth the following guidelines to be used if one seeks to introduce a blood test in order to establish intoxication pursuant to section 1192 of the Vehicle and Traffic Law: "7. a. No person except a physician, registered professional nurse or laboratory technician as classified by civil service or as registered by the American Association of Medical Technologists and under the personal supervision and direction of a physician, acting at the request of a police officer shall be entitled to withdraw blood for the purpose of determining the alcoholic or drug content therein. This limitation shall not apply to the taking of a urine, saliva or breath specimen.” After careful consideration of the afore-mentioned statutes and the evidence as developed in this case, it is this court’s conclusion that there has been insufficient credible evidence introduced to prove that plaintiff was operating a motor vehicle while in an intoxicated condition. Although the hospital blood test was admissible pursuant to CPLR 4518, the test in question lacked substantial probative value, since it was submitted without showing that it conformed to the requirements of subdivision 7 of section 1194 of the Vehicle and Traffic Law.
The evidence in this case is undisputed that Miss Linda Thompson, a medical laboratory technician who analyzed the specimen allegedly obtained from the plaintiff, received it from someone in the emergency room. There is no evidence in this record to show who drew the blood sample, at whose instructions this was done, what solution was used to cleanse plaintiff’s body prior to extracting said sample, what type of *770 labeling procedure was followed, as well as the chain of custody from the person who drew the sample to Miss Thompson.
Subdivision 7 of section 1194 of the Vehicle and Traffic Law also provides that said blood test must have been conducted at the request of a police officer. Although this specific requirement was not followed in the instant case, it is this court’s opinion that failure to have a blood sample drawn at the request of a police officer would not in and of itself invalidate its admissibility in a civil trial. However, a review of the cases involving other contested blood alcohol analysis finds substantial support for the contention that the party seeking to rely upon such a test must be able to establish who drew the blood sample and that proper procedures were followed in the extraction, identification, and preservation of the specimen. (Hughes v State of New York, 23 Misc 2d 1081; Durham v Melly, 14 AD2d 389; Matter of Brown v Murphy, 43 AD2d 524.)
With the test aside, the only evidence indicating plaintiffs intoxication is that elicited from the plaintiff himself. He indicated that he had between three and five nine-ounce glasses of beer between approximately 3:15 p.m. and 4:30 p.m. on the day of the accident. He then went home and had a supper meal and had three bottles of beer after supper. Accepting the fact that plaintiff might have drunk five full nine-ounce glasses of beer during the afternoon and an additional three beers during the early evening hours, this is insufficient in and of itself to prove that plaintiff was operating a motor vehicle in an intoxicated condition. There were no witnesses to the accident and no testimony from the investigating police officer indicating evidence of intoxication. Therefore, this court holds that plaintiff is entitled to his P.I.P. benefits under the terms of his automobile insurance policy.