**Robert J. LYETH, Plaintiff–Appellee,**

v.

**CHRYSLER CORPORATION,**
**Defendant–Appellant,**

**Robert Abrams, Attorney General**
**of the State of New York,**
**Intervening Defendant.**

**Nos. 189, 505, Dockets 90–7433, 90–7591.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 28, 1990.
Decided March 29, 1991.

Mark A. Costello (Boylan, Brown, Code, Fowler, Randall & Wilson, Rochester, N.Y., of counsel), for plaintiff-appellee.

Thomas S. Wiswall (Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., of counsel), for defendant-appellant.

Thomas G. Conway, Asst. Atty. Gen., Albany, N.Y. (Peter H. Schiff, Deputy Sol. Gen., Rachel Kretser, Marla Tepper, Asst. Attys. Gen., of counsel), for intervening defendant.

Before NEWMAN, PIERCE, and ALTIMARI, Circuit Judges.

PIERCE, Senior Circuit Judge:

This appeal of a diversity case primarily involves a due process challenge to the compulsory alternate arbitration mechanism of New York's New Car Lemon Law ("Lemon Law"). Chrysler Corporation appeals from a judgment entered April 4, 1990, in the United States District Court for the Western District of New York (David G. Larimer, *Judge*) granting plaintiff's summary judgment motion, thereby confirming an arbitration award under the Lemon Law, and a judgment entered May 24, 1990, awarding attorney's fees and costs to plaintiff and confirming an award of costs under the Lemon Law. In addition to its due process challenge, Chrysler makes the following arguments: it was denied meaningful review of the arbitral award; the award was not founded on a rational basis; the district court erred by granting summary judgment and by denying its discovery requests; Lyeth was not entitled to "rearbitrate" his claim; the arbitrator exceeded his authority by awarding Lyeth a new car; and Lyeth was not entitled to attorney's fees. We hold: the compulsory alternate arbitration mechanism affords the basic procedural safeguards required by due process; since Chrysler failed to request a record of the arbitration hearing, it may not rely upon the lack of one to press its claims that was denied meaningful review and that the award lacks a rational basis; summary judgment was properly granted; the denial of Chrysler's discovery requests was not an abuse of discretion; Lyeth was eligible to seek relief under the compulsory alternate arbitration mechanism; and the award of attorney's fees and costs was proper. We conclude, however, that the arbitrator exceeded his authority by awarding Lyeth a new car. We therefore affirm the judgments as modified and remand with instructions to request that the Lemon Law arbitrator render a modified award.

## BACKGROUND

In October 1984, Lyeth purchased a new 1985 model Jeep Cherokee that was manufactured by Jeep Corporation, a subsidiary of American Motors Corporation ("AMC"). After Lyeth had driven the jeep between 1,000 and 1,500 miles, he discovered that periodically the front-end of the jeep vibrated severely when he drove over 45 miles per hour during warm weather. Lyeth returned the jeep to the dealer to correct the problem at least four times during his first two years of ownership, but the dealer was unable to repair the defect.

A year later, based on the continuing defective condition, Lyeth sought arbitration pursuant to AMC's non-binding arbitration program conducted by the Better

Business Bureau ("BBB"). At the time, Lyeth had driven the jeep about 12,600 miles. On March 14, 1986, after a road test and a visual inspection of the jeep, two BBB arbitrators determined that "the vehicle in this case may have the problems described by Mr. Lyeth" but that these problems were not "apparent," and they requested that Lyeth arrange to have an independent inspection made. The BBB arbitrators directed that upon receipt of the inspection results, AMC had thirty days to perform the repairs, and afterwards, Lyeth had thirty days to decide whether the defect had been repaired to his satisfaction.

Since the vibration problem was sporadic and had surfaced only during warm weather, Lyeth initially accepted the decision subject to the condition that he be allowed until August 1986 to determine whether the defect had been corrected. Neither the BBB arbitrators nor AMC consented to Lyeth's proposal. Thereafter, in a letter to the BBB, dated April 29, 1986, Lyeth explicitly rejected the decision of the arbitrators, and thus, it did not become legally binding on the parties.

Chrysler acquired AMC in August 1987 and, as a result of corporate restructuring, assumed whatever legal obligations existed in this case. A month later, Lyeth submitted a request for compulsory arbitration under the Lemon Law to the New York State Attorney General's Office. An arbitrator from the American Arbitration Association ("AAA") conducted a hearing and determined that Lyeth was entitled to relief under the Lemon Law. At the time of the AAA hearing, Lyeth had driven the vehicle approximately 47,700 miles. On November 2, 1987, the AAA arbitrator awarded Lyeth a "new model Jeep Cherokee including all options included within his 1985 Jeep Cherokee." Chrysler objected to the AAA arbitrator's decision, arguing that the award should have been reduced for Lyeth's use of the jeep in excess of 12,000 miles. The AAA arbitrator declined to modify the award. Chrysler did not, as required by a Lemon Law regulation, honor the arbitrator's decision within thirty days.

In March 1988, Lyeth instituted a special proceeding in the New York State Supreme Court, Monroe County, and requested that the award be confirmed pursuant to section 7510 of New York's Civil Practice Law and Rules ("CPLR"). Chrysler removed the proceeding on diversity grounds to the district court for the Western District of New York. In its answer, Chrysler raised thirteen defenses, including defenses attacking the Lemon Law on state and federal constitutional grounds. Chrysler served notices of depositions and requests for documents on Lyeth, on the arbitrator who had issued the Lemon Law award, on the AAA, and on the State of New York. Lyeth moved to remand the matter to state court or, alternatively, for summary judgment, and for a protective order and attorney's fees. The Attorney General of the State of New York moved to intervene and also moved for a protective order. In orders filed May 4, 1989, the district court denied Lyeth's motion to remand, granted the State's motion to intervene, and stayed Chrysler's discovery requests until further order. In a decision and order dated October 16, 1989, the district court ruled that Chrysler's broad discovery requests were wholly inappropriate and unnecessary in the context of reviewing an arbitral award, and granted Lyeth's and the State's motions for a protective order.

On April 4, 1990, the district court granted Lyeth's summary judgment motion, thereby confirming the arbitration award, and ordered Chrysler to pay reasonable attorney's fees and costs. The opinion is reported at 734 F.Supp. 86 (W.D.N.Y.1990). The court held that (1) the Lemon Law did not violate the New York State Constitution or the State Administrative Procedures Act; (2) the Lemon Law's compulsory arbitration provision did not violate the due process or equal protection clauses of the fourteenth amendment of the United States Constitution; (3) the regulations promulgated by the state's Attorney General to implement the Lemon Law were consistent with the statute's legislative goals; (4) plaintiff's previous participation in informal dispute resolution did not bar him from seeking relief through compulsory arbitra-

tion; and (5) the AAA arbitrator did not exceed his authority when he awarded plaintiff a new car.

The district court also directed Lyeth's counsel to submit an affidavit concerning his fees and gave Chrysler an opportunity to respond to the fee application. By order dated May 23, 1990, the court awarded $19,692 in attorney's fees, $200 in filing charges, $500 for Chrysler's noncompliance and $160.76 in costs, totaling $20,552.76. This appeal followed.

## DISCUSSION

New York's New Car Lemon Law, ch. 444, 1983 N.Y. Laws 840, (codified at N.Y. Gen.Bus.Law § 198–a), creates a statutory warranty for any new motor vehicle for the first two years of ownership or 18,000 miles of operation, whichever occurs sooner. § 198–a(b). It provides that if, after a "reasonable number of attempts," a manufacturer cannot repair a defect or condition that substantially impairs the value of the motor vehicle, then "the manufacturer, at the option of the consumer, shall replace the motor vehicle with a comparable motor vehicle, or accept return of the vehicle from the consumer and refund to the consumer the full purchase price" of the motor vehicle. § 198–a(c)(1). A "reasonable number of attempts" is presumed under the statute if the same defect has been subject to repair at least four times or if the vehicle is out of service due to repairs for a total of thirty or more days. § 198–a(d).

The Lemon Law was amended in 1986 to address, *inter alia*, the "growing consumer dissatisfaction with informal dispute settlement mechanisms" administered by motor vehicle manufacturers. Approval Memorandum of Governor, ch. 799, 1986 N.Y. Laws 3202, August 2, 1986. One important amendment to the Lemon Law was providing consumers with the option of submitting their disputes to a compulsory "alternate arbitration mechanism." Professional arbitrators, appointed by the Attorney General, are to conduct these arbitrations. § 198–a(k). This arbitration forum has been available to consumers since January 1, 1987. Ch. 799, 1986 N.Y.Laws 1882, 1888.[1]

### A. Due Process Challenge

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In the context of a statutory scheme that involves compulsory arbitration, due process does not guarantee any particular form of state procedure. Rather " 'a state may choose the remedy best adapted, in the legislative judgment, to protect the interests concerned provided its choice is not unreasonable or arbitrary, and the procedure it adopts satisfies the constitutional requirements of reasonable notice and opportunity to be heard.' " *Country–Wide Ins. Co. v. Harnett*, 426 F.Supp. 1030, 1033 (S.D.N.Y.) (quoting *Hardware Dealers Mut. Fire Ins. Co. v. Glidden Co.*, 284 U.S. 151, 158, 52 S.Ct. 69, 71, 76 L.Ed. 214 (1931)), *aff'd mem.*, 431 U.S. 934, 97 S.Ct. 2644, 53 L.Ed.2d 252 (1977).

In *Harnett*, a three-judge court held that the process afforded under the compulsory binding arbitration provision of New York's No–Fault Insurance Law, N.Y.Ins. Law § 675 (McKinney Supp.1975) (current version at N.Y.Ins.Law § 5106 (McKinney 1985)), clearly passed federal constitutional muster because it provided for adequate notice, a hearing before an impartial decision-maker, presentation of evidence and witnesses who testify under oath, assistance of counsel, and judicial review of the award under the standard of review articulated in *Mount St. Mary's Hosp. v. Catherwood*, 26 N.Y.2d 493, 311 N.Y.S.2d 863, 260 N.E.2d 508 (1970), and *Caso v. Coffey*, 41 N.Y.2d 153, 391 N.Y.S.2d 88, 359 N.E.2d 683 (1976). *Harnett*, 426 F.Supp. at 1033–34.

---

[1]. In cases unrelated to the one herein, this Court has previously considered challenges to New York's Lemon Law. *See Motor Vehicle Mfrs. Ass'n v. Abrams*, 899 F.2d 1315 (2d Cir. 1990) (preemption issue), *cert. denied,* — U.S. ——, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991); *General Motors Corp. v. Abrams*, 897 F.2d 34 (2d Cir.1990) (same).

■ The alternate arbitration mechanism set forth in § 198–a(k) and the regulations promulgated thereunder, 13 N.Y.C.R.R. Part 300, establish a compulsory arbitration process for Lemon Law disputes that is substantially similar to the compulsory arbitration process of New York's No–Fault Insurance Law, which was deemed constitutionally valid in *Harnett*. A manufacturer must be given notice of a consumer's request for arbitration within five days of the filing date and may respond in writing within fifteen days of the filing date. *Id.* § 300.8(c). The arbitrator assigned to the hearing shall not have any bias or any financial or personal interest in the outcome of the hearing. *Id.* § 300.7(b). Any relevant evidence may be introduced. *Id.* § 300.13(c). Testimony must be given under oath. *Id.* § 300.13(b). Parties may be represented by counsel. *Id.* § 300.11. And Lemon Law arbitration awards are subject to judicial review under CPLR articles 75 and 78. *Motor Vehicle Mfrs. Ass'n v. State*, 75 N.Y.2d 175, 186, 551 N.Y.S.2d 470, 476, 550 N.E.2d 919, 925 (1990). Given these procedural safeguards, we conclude that the district court correctly determined that § 198–a(k) does not deprive motor vehicle manufacturers of due process.

Chrysler's claim that it was denied due process in this particular proceeding is also unavailing. It argues that since the AAA arbitrator did not provide a summary of the evidence and the reasons for the award in his decision [2] and since a record of the arbitration hearing was never made, judicial review of the subject award cannot be properly performed.

■ The applicable standard of review for a compulsory arbitration award under the Lemon Law is whether the award is supported by adequate evidence in the record and whether it is "rational and satisf[ies] the arbitrary and capricious standards of CPLR article 78." [3] *Motor Vehicle Mfrs. Ass'n*, 75 N.Y.2d at 186, 551 N.Y.S.2d at 476, 550 N.E.2d at 925. Although it is an established principle that an arbitrator is not required to state the reasons or grounds for his determination, *Commercial Union Ins. Co. v. Ewall*, —— A.D.2d ——, 562 N.Y.S.2d 484, 486 (1st Dep't 1990); *Dahn v. Luchs*, 92 A.D.2d 537, 538, 459 N.Y.S.2d 101, 102 (2d Dep't 1983); *Paul v. Insurance Co. of N. Am.*, 81 A.D.2d 671, 671, 438 N.Y.S.2d 348, 349 (2d Dep't 1981); *Suarez v. Country–Wide Ins. Co.*, 79 A.D.2d 591, 592, 434 N.Y.S.2d 235, 236 (1st Dep't 1980), there is an underlying requirement that there be a rational basis for the award, and whether or not such a basis exists can be determined from a reading of the record evidence, *see Ewall*, —— A.D.2d at ——, 562 N.Y.S.2d at 486; *Dahn*, 92 A.D.2d at 538, 459 N.Y.S.2d at 102.

■ According to a New York appellate court, under § 198–a(k), manufacturers are not precluded from requesting a stenographic transcript of the arbitration hearing. *Motor Vehicle Mfrs. Ass'n v. State*, 146 A.D.2d 212, 221, 540 N.Y.S.2d 888, 893 (3d Dep't 1989), *aff'd*, 75 N.Y.2d 175, 551 N.Y.S.2d 470, 550 N.E.2d 919 (1990). Chrysler contends that when it and other manufacturers have requested that a record of an arbitration hearing be made by a recording or by stenographic minutes, AAA arbitrators have often denied these requests. The affidavits in support of this assertion, however, concern arbitrations which are unrelated to the one herein. Moreover, at oral argument Chrysler essentially conceded that during the instant arbitration, it made no request for stenographic minutes or a recording of the pro-

---

**2.** Arbitrators are required to use the decision forms prescribed by the administrator of the alternate arbitration mechanism and approved by the Attorney General. 13 N.Y.C.R.R. § 300.17(a). Since June 15, 1988, the decision form has provided space for a summary of the evidence and a check list for the arbitrator's findings.

**3.** We recognize that when arbitration has been made compulsory rather than consensual, due process considerations require the courts to exercise a broader scope of review, *Furstenberg v. Allstate Ins. Co.*, 49 N.Y.2d 757, 758, 426 N.Y.S.2d 465, 466, 403 N.E.2d 170, 171 (1980); *Caso*, 41 N.Y.2d at 156, 391 N.Y.S.2d at 90, 359 N.E.2d at 685, because claimants are denied access to the courts in the first instance, *Shand v. Aetna Ins. Co.*, 74 A.D.2d 442, 446, 428 N.Y.S.2d 462, 466 (2d Dep't 1980).

ceeding. Since the right to make such a record is not precluded under § 198–a(k) and since Chrysler could have requested stenographic minutes, but did not, we believe Chrysler cannot now rely upon the lack of a record in order to press its claim that the arbitral award must be vacated.[4] *See Broderick v. Suffolk County Bar Ass'n*, 157 A.D.2d 780, 780, 550 N.Y.S.2d 378, 378 (2d Dep't 1990) (petitioner who participated in arbitration and knew that the minutes of the hearing were not being recorded waived any issue regarding the lack of a record); *Suarez*, 79 A.D.2d at 592, 434 N.Y.S.2d at 236 ("No one having requested stenographic minutes of the hearing, the award is not invalidated by the absence of such minutes."); *Reale v. B. Healy N.Y. Corp.*, 54 A.D.2d 1039, 1040, 388 N.Y.S.2d 688, 691 (3d Dept.1976) (arbitral award would not be vacated for lack of a written record of the arbitration proceeding where petitioners never requested a written record or objected to the lack thereof); *Miller v. Chrysler Corp.*, No. 2942–88, slip op. at 4 (Sup.Ct., Albany County June 13, 1989) ("Chrysler had the means to cure all of the other objections it raises by simply having a stenographic record of the arbitration proceeding made.... Having failed to effectively employ the procedural safeguards afforded to it by the State of New York, Chrysler cannot use its own inaction as a basis for overturning the arbitration award.").

■ Chrysler's contention that the regulations do not "protect the right to review" because they do not require that a record of each arbitration hearing be made also lacks merit.[5] *Cf. Caso*, 41 N.Y.2d at 159, 391 N.Y.S.2d at 92, 359 N.E.2d at 686 (rejecting argument that absence of record of arbitration proceedings prevented proper review). Chrysler additionally argues that even if it failed to request a record in this particular proceeding, the arbitration mechanism fails to provide due process because the regulations do not inform parties that

they have the right to request a record. We hold that due process does not require explicitly informing parties involved in compulsory arbitration that they have the right to make a record of the arbitration hearing.

■ Furthermore, it should be emphasized that the burden of demonstrating the invalidity of an arbitral award rests with the party attacking the award. *See Caso*, 41 N.Y.2d at 159, 391 N.Y.S.2d at 92, 359 N.E.2d at 687; *Broderick*, 157 A.D.2d at 780, 550 N.Y.S.2d at 378–79; *S. Wiener Furniture Co. v. Kingston City Schools Consol.*, 90 A.D.2d 875, 875–76, 456 N.Y.S.2d 474, 475–76 (3d Dep't 1982). Chrysler's claim that summary judgment was erroneously granted because it raised genuine issues of fact as to the sufficiency of the evidence presented to the arbitrator is unpersuasive. The only support for this claim is a carefully worded affidavit by Gregory Schoonover, the Arbitration Coordinator of Chrysler's Syracuse office who attended Lyeth's arbitration hearing. Schoonover avers that "[a]t the hearing, plaintiff failed to offer four or more repair orders from American Motors, Chrysler, or their agents of authorized dealers" and that certain records that were accepted into evidence by the AAA arbitrator demonstrate that the jeep was not out of service due to repairs for thirty or more days as statutorily required. This assertion by Chrysler misses the point. Schoonover does not otherwise relate what evidence *was* presented at the hearing. Noticeably absent from his affidavit is any claim that Lyeth did not *testify* that he returned his jeep for repairs at least four times. While our ignorance as to what evidence was presented at the arbitration hearing is largely attributable to the fact there is no record of the hearing, Chrysler cannot rely on this fact to support its claims, since it failed to request that a record of the hear-

---

4. We need not address at this time whether due process is violated when a party requests that a record of the proceeding be made and that request is denied.

5. We also note that a regulation implementing the No–Fault Insurance compulsory arbitration program specifically states that a stenographic record of the arbitration proceedings is not required. 11 N.Y.C.R.R. § 65.7(a)(13).

ing be made. *See Broderick*, 157 A.D.2d at 780, 550 N.Y.S.2d at 378.

■ Chrysler has failed to meet its burden of establishing lack of a rational basis as a ground for vacating the award. "An award may be found on review to be rational if any basis for such a conclusion is apparent to the court." *Caso*, 41 N.Y.2d at 158, 391 N.Y.S.2d at 91, 359 N.E.2d at 686. Here, we are unable, in the absence of a full record, to conclude "that there was not a rational basis for the award or that the award was not otherwise grounded in reason." [6] *Furstenberg*, 49 N.Y.2d at 759, 426 N.Y.S.2d at 466, 403 N.E.2d at 171. Once an arbitrator issues an award following an arbitration proceeding in which opposing parties have participated, even if such participation was pursuant to a compulsory arbitration law (which has survived constitutional challenge), a party may not effectively nullify such an award *merely* by challenging it via an incantation charging lack of rational basis, bias, financial or personal interest, or like claims. Any such challenge imposes an evidentiary burden upon the challenger to overcome the presumptive validity of a properly authenticated arbitral award. *See Caso*, 41 N.Y.2d at 159, 391 N.Y.S.2d at 92, 359 N.E.2d at 687 ("our statutes and case law indicate plainly that the burden to show invalidity of any arbitral award is upon the party who brings a proceeding to set it aside"). We conclude that the district court's grant of summary judgment in favor of Lyeth, which thereby confirmed the arbitral award, was proper.

Finally, Chrysler maintains that the alternate arbitration mechanism lacks sufficient provisions to ensure that arbitrators will be qualified and impartial; it also asserts that the Attorney General is biased in favor of consumers. Chrysler, however, offers no persuasive evidence demonstrating that Lemon Law arbitrators—including the particular arbitrator in this case—are not qualified or impartial or that the Attorney General is biased. The district court properly rejected these arguments.

### B. *Denial of Discovery Requests*

The parties disagree as to whether Chrysler's discovery requests should be addressed in the manner prescribed by state law or by the Federal Rules of Civil Procedure. Lyeth contends that the State, by providing that Lemon Law arbitration awards be enforced only through special proceedings, established an enforcement mechanism that is an integral part of the substantive right created by § 198–a(k). He therefore asserts that CPLR § 408, which limits discovery in special proceedings, is applicable. Chrysler argues that since discovery is a procedural matter, Rule 26 of the Federal Rules of Civil Procedure governs requests for discovery. It is unnecessary for us to decide this issue in this case because we conclude that the discovery requests were properly denied under both the state and federal rules regarding discovery.

Management of discovery lies within the sound discretion of the district court, and we will reverse that court's rulings on discovery matters only upon a clear showing of abuse of discretion. *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir.1990); *Robertson v. National Basketball Ass'n*, 622 F.2d 34, 35–36 (2d Cir. 1980). The district court has discretion to deny discovery in a proceeding to confirm an arbitral award. *See Imperial Ethiopian Gov't v. Baruch–Foster Corp.*, 535 F.2d 334, 337 (5th Cir.1976) ("The loser in arbitration cannot freeze the confirmation proceedings in their tracks and indefinitely postpone judgment by merely requesting discovery.").

■ Chrysler could have requested that the arbitrator direct Lyeth to produce certain documents or information prior to the arbitration hearing; it also could have requested that the arbitrator subpoena certain witnesses to appear or specific documents to be presented at the hearing. 13

---

**6.** We do not mean to imply that in the absence of a full record the lack of a rational basis for an award can never be demonstrated, but in this case we have no grounds for doubting that a rational basis existed.

N.Y.C.R.R. § 300.10(a), (e). Some of the information Chrysler sought below could and should have been requested prior to the hearing, *e.g.*, any records regarding Lyeth's attempts to repair the jeep. Other information would have been available had Chrysler requested stenographic minutes of the arbitration hearing. It is our judgment that the district court did not abuse its discretion by granting Lyeth's motion for a protective order.

 To the extent that Chrysler's request to depose the individual arbitrator was aimed at contesting Lyeth's Lemon Law award, the district court properly denied discovery because Chrysler did not present clear evidence of any impropriety. *See Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 (2d Cir.1978). We also conclude that the district court properly denied the discovery requests served upon the individual arbitrator, the AAA, and the State. Chrysler presented no evidence that the individual arbitrator had any financial or personal stake in the outcome of the arbitration. As for the discovery requests directed at the AAA, we believe that the district court did not err when it observed that Chrysler was simply "engaging in a fishing expedition in an attempt to determine if there is some basis, however farfetched, to prosecute a claim of bias." Finally, Chrysler offers no persuasive reasons why the denial of its discovery request directed at the State of New York was a clear abuse of discretion.

C. *Lyeth's Participation in Compulsory Arbitration*

 A further issue is presented as to whether a consumer who has participated in a manufacturer's non-binding arbitration program and has rejected the arbitrator's decision can thereafter seek relief under the Lemon Law's compulsory arbitration mechanism.

Chrysler urges that the legislature intended that the compulsory arbitration provision of § 198–a(k) would be an *exclusive* alternative to a manufacturer's non-binding informal dispute resolution procedure, and thus, Lyeth's second arbitration was not authorized under § 198–a. Its ultimate argument is that the Lemon Law regulation, which provides that "[p]articipation in any manufacturer's informal dispute resolution mechanism that is not binding on the consumer shall not affect the eligibility of a consumer to participate in the [compulsory arbitration] program," 13 N.Y.C.R.R. § 300.5(i), is inconsistent with the statute and therefore invalid. We disagree.

Under the original Lemon Law, consumers sought relief through nonbinding informal arbitration programs created by manufacturers or by bringing suit under the Lemon Law. Realizing that these methods were often costly for the average consumer and frequently resulted in long delays and unfair awards, the legislature amended the Lemon Law by creating a compulsory alternate arbitration mechanism. *Motor Vehicle Mfrs. Ass'n*, 75 N.Y.2d at 179–80, 551 N.Y.S.2d at 471–72, 550 N.E.2d at 920–21.

Section 198–a(h) provides, "In no event shall a consumer who has resorted to an informal dispute settlement mechanism be precluded from seeking the rights or remedies available by law." Since relief under § 198–a(k) is one of the "rights or remedies available by law," we believe that the language in § 198–a(h) belies Chrysler's contention. We also note that at least one New York court has apparently found that a consumer who accepted two decisions by a BBB arbitrator but rejected the third decision was not bound by the last, and therefore, was not precluded from proceeding to compulsory arbitration under the Lemon Law. *Chevrolet Div., General Motors Corp. v. Banks*, 142 Misc.2d 281, 283–84, 536 N.Y.S.2d 972, 974 (Sup.Ct., Albany County 1988).

Moreover, we reject Chrysler's counterargument that since the legislature enacted § 198–a(k) after § 198–a(h), it could not have contemplated § 198–a(k) as one of the "rights or remedies available by law." It is a well-established precept of statutory construction that for the purpose of interpretation, the original act and all of its amendments are construed together and are viewed as one law passed at the same time. *See Citibank, N.A. v. City of New*

*York Fin. Admin.,* 43 N.Y.2d 425, 431, 401 N.Y.S.2d 1001, 1003, 372 N.E.2d 789, 791 (1977), *rev'd on other grounds sub nom. Chase Manhattan Bank, N.A. v. Finance Admin. of City of New York,* 440 U.S. 447, 99 S.Ct. 1201, 59 L.Ed.2d 445 (1979) (per curiam); *Morgan v. Hedstrom,* 164 N.Y. 224, 229–30, 58 N.E. 26, 27 (1900); N.Y. Statutes § 192 (McKinney 1971). Therefore, since we conclude that one of the "rights or remedies available by law" to a consumer is the relief afforded under § 198–a(k), we cannot agree that regulation § 300.5(i) is unreasonable, inappropriate or plainly inconsistent with the Lemon Law statute. *See New York Foreign Freight Forwarders & Brokers Ass'n v. Federal Maritime Comm'n,* 337 F.2d 289, 295 (2d Cir.1964), *cert. denied,* 380 U.S. 910, 85 S.Ct. 893, 13 L.Ed.2d 797 & 380 U.S. 914, 85 S.Ct. 902, 13 L.Ed.2d 800 (1965).

### D. *"Vehicle of Comparable Quality"*

Chrysler's further contention is that the district court erred when it found that the arbitrator did not exceed his authority by awarding Lyeth a new vehicle.

New York appellate courts have construed the phrase "vehicle of comparable quality" and have decided that a consumer who selects the replacement vehicle remedy is not entitled to a new vehicle. *See Hynson v. American Motors Sales Corp.,* 164 A.D.2d 41, 48, 561 N.Y.S.2d 589, 593–94 (2d Dep't 1990); *Volvo N. Am. Corp. v. DePaola,* 156 A.D.2d 40, 42, 554 N.Y.S.2d 835, 836–37 (1st Dep't 1990). Instead, as the legislative history states, the replacement vehicle should be comparable "with respect to the mileage, model year and value of the vehicle being returned." 1983 N.Y.S.Legis. Ann. 199–200. Applying that definition to this case, we conclude that Lyeth is entitled to a 1985 model Jeep Cherokee that has been driven approximately 47,700 miles. Although Lyeth had driven the jeep only 12,600 miles when he sought relief pursuant to AMC's non-binding arbitration program, in our view, the relevant mileage is 47,700 not 12,600 because the informal arbitration did not become legally binding on the parties and, later, when Lyeth sought relief under § 198–a(k), the jeep had been

driven approximately 47,700 miles. We therefore modify this aspect of the judgment confirming the award and remand with instructions to request that the Lemon Law arbitrator render a modified award.

### E. *Attorney's Fees*

Finally, Chrysler argues that Lyeth is not a prevailing party and, therefore, not entitled to attorney's fees. We disagree and affirm the district court's decision to award attorney's fees. The Lemon Law provides that reasonable attorney's fees may be awarded "to a prevailing plaintiff or to a consumer who prevails in any judicial action or proceeding arising out of an arbitration proceeding held pursuant to [§ 198–a(k)]." § 198–a(*l*). As the district court noted, this provision was amended in 1988 and 1990 "to protect consumers from being worn down by protracted post-arbitration litigation where the decision of an arbitrator awarding relief under the New Car Lemon Law is upheld." Givens, Supplementary Practice Commentaries, N.Y. Gen.Bus.Law § 198–a (McKinney Supp. 1991); *cf. Hynson,* 164 A.D.2d at 49, 561 N.Y.S.2d at 594 (court may award counsel fees to petitioner who moves to confirm Lemon Law award pursuant to CPLR article 75). Since Lyeth prevailed on almost all of the issues presented, we award him 80 percent of his reasonable attorney's fees and costs on this appeal. Plaintiff is instructed to submit an affidavit to this Court with notice to Chrysler detailing his attorney's fees and costs incurred on this appeal.

We have considered Chrysler's remaining arguments and find them to be without merit. Accordingly, the judgments of the district court are affirmed as modified and the matter is remanded with instructions to request that the Lemon Law arbitrator render a modified award.